IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| SARETTA MILDRED GROSS, | : | CIVIL ACTION NO. |
| | : | 1:21-CV-1247-TCB-JSA |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| UNITED PARCEL SERVICE *et al.*, | : | **FINAL REPORT AND** |
| | : | **RECOMMENDATION ON A** |
| Defendants. | : | **MOTION TO DISMISS** |

Plaintiff, *pro se*, brings this case against her former employer, Defendant United Parcel Service ("UPS"), and her former labor union, Defendant Teamsters Local 728 ("Teamsters"), claiming discrimination based on race and other grounds, principally in connection with her termination in or about August 2020, as well as breach of contract. The Court previously found that the Complaint fails to state a claim but allowed Plaintiff the opportunity to amend certain claims. After amendment, Defendants now renew their motions to dismiss ("Motions"). *See* Motions [67][68].

The Court agrees that the Amended Complaint continues to fail to state a claim on any of the grounds alleged, and therefore **RECOMMENDS** that the Motions be **GRANTED** and the Amended Complaint be **DISMISSED**. The Court recommends that the federal claims (Counts 1-3) be dismissed for failure to state a claim and the state law claim for breach of contract (Count 4) be dismissed for lack

of subject matter jurisdiction.

## I.     BACKGROUND

The Court previously summarized the allegations and claims in its Order and Non-Final Report and Recommendation [56], dated August 31, 2021 ("R&R"). The Court will not re-state its prior summary of the facts or legal discussion of the claims, but incorporates the same herein.

In the R&R, the Court found that Plaintiff's claims of sex and disability-based discrimination against the Teamsters, and her claims against UPS based on any adverse actions other than her termination and related events from August 12-18, 2020, and sexual harassment, should be dismissed with prejudice, but that the remaining claims should be allowed to be repleaded. As to these remaining claims of wrongful termination, the Court found that the Complaint was a so-called "shotgun complaint" for a number of reasons, including that it did not clearly set out the individual claims being asserted with clear reference to the factual allegations in support. The Court also found that Plaintiff's claims, to the extent discernible, were entirely conclusory, and failed to assert any allegations of fact sufficient to support an inference of discrimination on the grounds of race or any other protected basis. However, the Court offered many pages of guidance and explanation to assist Plaintiff in understanding what was needed to attempt to cure these violations.

The District Judge adopted the R&R and dismissed the Complaint, without

prejudice to re-filing certain claims as explained above. Order [60]. Prior to the issuance of the District Judge's Order, apparently based on the recommendations set forth in the R&R, Plaintiff had already filed another Amended Complaint [61], but then filed a final Amended Complaint [66] after issuance of the Order. The Court treats this most recent Amended Complaint [66] (the "Amended Complaint") as the operative pleading in this case.

As the Court ordered, the Amended Complaint now sets forth individual allegations by paragraph number and sets forth four separate claims: Count I (race discrimination in violation of Title VII against both Defendants), Count 2 (unlawful retaliation in violation of Title VII against both Defendants), Count 3 (age discrimination against the Teamsters), and Count 4 (breach of contract against both Defendants). Otherwise, the factual basis of the Amended Complaint appears to be substantially the same as that summarized in more detail in the previous R&R.

The allegations remain very difficult to understand but, in sum, Plaintiff describes being terminated in August 2020 after a confusing series of events in which she had been out sick, then had difficulty clocking back in because she did not have a timecard, and received hostility and disrespect from certain supervisors and human resources officers and ultimately was "constructively terminated." As for the Teamsters, Plaintiff explains that she attempted to seek support through a grievance process with union officials, but they also were hostile to her and refused to assist

her in her complaints against UPS.

## II. DISCUSSION

### A. *Federal Claims*

Again, the Court incorporates, and does not repeat, the explanation contained in the R&R as to the applicable pleading standards and legal elements of the claims in this case. The Court finds that the Amended Complaint fails to rectify the pleading deficiencies previously identified in the R&R, at least as to the federal claims, and therefore remains subject to dismissal.

First, while the Amended Complaint is less abusive than the original pleading, it still qualifies as a "shotgun complaint." The Court appreciates that Plaintiff has now organized the Complaint with separately-enumerated factual allegations and individually-listed and entitled legal claims. Nevertheless, it remains that the Amended Complaint is based on a lengthy series of confusing, often conclusory, and largely tangential statements and events presented in a stream-of-consciousness style with almost no clear facts directly relating to any claims of unlawful termination. The Court remains left to attempt to pore through these pages and pages of difficult-to-decipher allegations to attempt to even figure out the basis of Plaintiff's claim.

As just one example of a factual allegation of entirely unexplained and unclear significance, Plaintiff alleges that "[i]n July of 2020," apparently prior to her return from being sick and difficulties clocking-in, "Supervisor Larry Taylor walk the

4

plaintiff to another work location then left her there with a lesbian supervisor name Jennifer without telling the plaintiff anything on instructions or the assignment then Larry walks away." Amended Complaint [66] ¶ 58. The Court is simply unable to discern how this and many other non-sequitur statements relate to the legal elements of a race or age discrimination or retaliation case, and the inclusion of so many scattershot assertions remains a hallmark of a "shotgun complaint."

Moreover, the factual allegations of the Complaint, to the extent understandable, continue to fail to support any inference of discrimination on the basis of race or age, or retaliation against protected activity. Clearly, Plaintiff feels that she was treated unfairly and was the subject of disrespectful hostility by her supervisors and human resources officers at UPS and by her union representatives at the Teamsters. But Title VII, the Age Discrimination in Employment Act, and other federal anti-discrimination statutes do not generally proscribe incivility or unfairness in the workplace. Rather, as the Court previously explained in the R&R, to successfully assert a legal claim under Title VII, Plaintiff must allege non-conclusory facts that would support an inference that her termination was on the basis of or motivated by race-based discrimination. Plaintiff's other claims of discrimination require similar showings of specific facts in support.

Plaintiff's assertion of race discrimination appears to be entirely based on her own speculation and subjective conclusions. The Amended Complaint lacks any

5

understandable reference to similarly-situated comparators from other racial backgrounds who faced comparable situations but who were not terminated, or other facts to support an inference of discrimination. The only clear reference to any apparent race-based comparator is in Paragraph 57, which states, "Latino worker name Ivan Torres who was treated more favorable than the plaintiff was treated. In Jan of 2020, Larry Taylor removed the plaintiff from her work area and replaced her with Ivan Torres (male) then sends her to a harder work area just because the plaintiff associated with Ivan Torres." Amended Complaint [66] ¶ 57. There are many deficiencies with this reference, including that a mere reassignment to a different "work area," seven months prior to Plaintiff's termination, in unknown circumstances, not apparently because of race but rather because plaintiff "associated with Ivan Torres," is of completely undiscernible significance.

The Complaint also conclusorily asserts that "[y]ounger workers like Ashley, Karen, Trinity, Vicky, and Ivan Torres was treated more favorable than the plaintiff[,]" and even confusingly cites this allegation in support of the race discrimination count. *See* Amended Complaint [66] ¶ 61. Plaintiff also alleges that "[t]hese employees were not removed from the seniority list, but the plaintiff was." *Id*. Obviously, an allegation such as this is nonsensical as it relates to race discrimination. As to Plaintiff's age discrimination case, which appears to be only asserted against the Teamsters, it is not at all clear who (if anyone associated with

6

the Teamsters at all) treated these UPS employees more favorably than Plaintiff. Nor is there any explanation provided as to what the "seniority list" was, when Plaintiff was removed from this list, whether these other "younger" employees were similarly-situated to Plaintiff, and what significance being removed from a "seniority list" at some unknown point in time had as to the reasons for Plaintiff's termination or constructive termination.

The Complaint also alleges that several of these same "younger" workers received other "special treatment" by Plaintiff's UPS supervisor "Larry," such as being allowed to wear "club casual attire and tall designer boots" and "bringing cell phone to work." Plaintiff speculates that "she would suffer from race discrimination and retaliation" if she were to do such things. *Id*. ¶ 55. Putting aside the continued confusing nature of conflating the claims for age and race discrimination, Plaintiff's belief that she would likely not be allowed to wear designer boots is simply not a fact supportive of her wrongful termination claim, especially against the Teamsters, for whom "Larry" does not appear to have been an agent.

Somewhat more focused on the Teamsters, Plaintiff states that "[u]nion stewards would investigate the younger workers complaints or grievances before they would handle any older workers complaints or grievances[,]" and then confusingly offers the non-sequitur, "Plaintiff never slept with any supervisors at UPS workplace at all." *Id*. ¶ 56. These allegations remain insufficient to suggest that

7

any similarly-situated "younger" workers received more favorable treatment and, in particular, were not terminated or re-instated for employment in circumstances comparable to those relating to Plaintiff's departure from UPS.

For all of these deficiencies, the undersigned recommends that the federal claims in the Amended Complaint, Counts 1-3, be dismissed for failure to state a claim. Because Plaintiff has been afforded the opportunity to amend her Complaint with specific warning as to the deficiencies in her Complaint, dismissal of these claims at this juncture should be with prejudice.

**B.** *State Claim (Breach of Contract)*

The foregoing recommendation would dispose of all federal claims in this case, which are the only apparent basis for subject matter jurisdiction in federal court. With all federal claims disposed of, the only basis for the Court to issue a ruling on the merits as to the remaining state law claim, for breach of contract, would be to exercise supplemental jurisdiction under 28 U.S.C. § 1367. In most circumstances at this early juncture in the case, however, the Court should decline to exercise such jurisdiction. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (the exercise of supplemental jurisdiction is discretionary, but, generally, "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well"); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) (the Eleventh Circuit has "encouraged

district courts to dismiss any remaining state claims when . . . the federal claims have been dismissed prior to trial").

In this case, the Court is unable to find that a breach of contract claim under Georgia law is clearly and obviously frivolous. Although Plaintiff provides few details, the Amended Complaint at least alleges that she was hired for a specific one-year term, i.e., not indefinitely at-will, and that she was fired by UPS without cause during that term in violation of this contract. *See* Amended Complaint [66] ¶ 104. Plaintiff also alleges that she was a contractual member of the Teamsters and that the Teamsters did not investigate Plaintiff's grievances or intercede or advocate for her with UPS as Plaintiff alleges she was entitled. *See id.* ¶¶ 37-38, 43, 112, 118. Whether any of these or other circumstances might theoretically support a breach of contract claim under Georgia law is unnecessary and inappropriate for this Court to assess, without any of the federal claims that supply the Court with original federal jurisdiction. Thus, the better approach is to dismiss the state claim (Count 4) without prejudice for lack of subject matter jurisdiction.

### III.  CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Motions to Dismiss [67][68] be **GRANTED**, and that the Amended Complaint [66] be **DISMISSED**. The Court recommends that the federal claims (Counts 1-3) be dismissed on the merits, for failure to state a claim, and that the state claim (Count

4) be dismissed without prejudice for lack of subject matter jurisdiction.

As this is a Final Report and Recommendation, there is nothing further in this action pending before the undersigned. Accordingly, the Clerk is **DIRECTED** to terminate the reference of this matter to the undersigned.

**IT IS SO RECOMMENDED** this 8th day of April, 2022.

                                                        JUSTIN S. ANAND
                                                        UNITED STATES MAGISTRATE JUDGE